UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ALLAN MULDOON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TEAMSTERS LOCAL 572, et al., <br> Defendants. | CV 22-0161 DSF (JPRx) <br><br> Order GRANTING Defendant's Motion to Dismiss (Dkt. 11) |

     This case arises out of Defendant Teamsters Local 572's (the Union), removal of Plaintiffs Casey Allan Muldoon, Daniel Jason Berger, Elias E. Kotsios, and John Anthony Radine from the Union over their alleged title of "Sales Supervisor" at their employer, Puritan Bakery, Inc. The Union moves to dismiss Plaintiffs' First Amended Complaint. Dkt. 11 (Mot.). Plaintiffs oppose. Dkt. 17 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the Union's motion is GRANTED.

## I. BACKGROUND

     Plaintiffs are drivers for Puritan Bakery, a bakery company in Carson, California. FAC ¶¶ 9-12. The Union was and is a local union affiliated with the International Brotherhood of Teamsters, representing Puritan Bakery's drivers. Id. ¶ 6. Muldoon has been a member of the Union since June 1989, has been a driver for Puritan Bakery since April 1992, and has held the title of Sales Supervisor since July 1, 2010. Id. ¶ 9. Berger has been a member of the Union since June 8, 2000, has been a relief driver for Puritan Bakery since

June 12, 1999, and has held the title of Sales Supervisor since February 1, 2013.  Id. ¶ 10.  Kotsios has been a member of the Union since August 5, 2004, has been employed as a driver for Puritan Bakery since July 5, 2004, and has held the title of Sales Supervisor since August 1, 2018.  Id. ¶ 11.  Radine has been a member of the Union since July 2005, has been employed as a driver for Puritan Bakery since June 25, 2005, and has held the title of Sales Supervisor since June 2019.  Id. ¶ 12.

During their employment with Puritan Bakery, the company maintained three bargaining units with the Union: Drivers and Sales "Supervisors," Warehouse and Bakery Employees, and Maintenance and Mechanic Employees.  Id. ¶ 13.  Plaintiffs allege that despite their titles of "Sales Supervisor," none of their job duties or functions "meet the test for 'supervisor' as defined under Section 2(1) of the National Labor Relations Act (NLRA).  Id. ¶¶ 13, 15.  Specifically, Plaintiffs "do not have the authority to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees."  Id. ¶ 15.  Nor do Plaintiffs "have the authority to recommend such personnel actions, or to assign or direct other employees' work."  Id.  In addition, Plaintiffs "do not have company credit cards, nor do they have authority to approve purchases."  Id.  Plaintiffs' job duties include acquiring new business and customers and retaining existing business and customers, collecting payments from customers, managing customer relations including complaints regarding product quality, helping "checkers" verify products on racks behind each drivers' truck, driving routes for absent drivers, cleaning and maintaining the warehouses and bathrooms, delivering additional product orders, filing incident, accident, and warehouse vehicle maintenance reports, calendaring vacations, and monitoring routes.  Id.

Plaintiffs allege that despite their non-supervisorial duties, they were expelled from the Union after years of inclusion because of their "Sales Supervisor" job title.  Id. ¶ 1.  Plaintiffs allege that at an unspecified meeting, the Union's agent, Steven Badger, announced that Sales Supervisors would be removed from the bargaining unit "without any explanation" and that some drivers believed the Sales Supervisors

2

were "aligned with [Puritan Bakery]" and "should not be allowed to vote on contracts." Id. ¶ 16.  On May 31, 2021, the Union removed all Sales Supervisors, including Plaintiffs, from the Union and its benefit plans purportedly without any "explanation to [P]laintiffs regarding their expulsion and removal from the CBA between Puritan Bakery, Inc. and defendant Union." Id. ¶ 18.

Plaintiffs contend that despite both verbal and written requests for an explanation of its decision, the Union did not provide such explanation.  Id.  Puritan Bakery's president acknowledged that Plaintiffs "'are foremen and not actually supervisors,' and that defendant Union would not even agree to allow Sales Supervisors to return to the position of Driver, such that Union would not be representing the Sales Supervisors at the bargaining table in any capacity." Id.

On November 23, 2021, Plaintiffs sued the Union in Los Angeles Superior Court.  Dkt. 1-4.  On December 2, 2021, Plaintiffs filed an amended complaint for (1) breach of duty of fair representation (DFR); (2) breach of written contracts; and (3) intentional infliction of emotional distress (IIED).  See dkt. 1-1 (FAC).  On January 7, 2022, the Union removed the case based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441.  Dkt. 1.

## II. LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted).  A complaint must "state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### III. DISCUSSION

#### A. Judicial Notice

The Union seek judicial notice of a collective bargaining agreement (CBA) between Puritan Bakery and the Union. Mot. at 2; see also dkt. 11-1 (Badger Decl.), Ex. A. The Union argues judicial notice of the CBA is warranted because it was referred to and incorporated into the complaint. Mot. at 2 n.2.

A court normally must convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings . . . . A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion . . . ." United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (simplified). The Ninth Circuit has "extended the incorporation by reference doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (simplified).

Plaintiffs argue that the CBA should not be considered because "[t]he third element is missing." Opp'n at 15. Plaintiffs purport to "question the authenticity of the copy attached to Badger's declaration" because "none of [the Plaintiffs] ha[ve] seen th[e] document and nowhere do they allege they have seen it or reviewed it." Id. However, the Ninth Circuit has held whether a plaintiff "had access to and reviewed the proffered documents is a matter unrelated to their authenticity—i.e., whether the documents are what [the] proponent claims." Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1161 (9th Cir. 2012) (simplified). Here, the Union claims that the CBA attached to Badger's declaration is a "true and correct copy of the collective-bargaining agreement between Puritan Bakery and the Union, effective October 1, 2020 through December 31, 2021." Badger Decl. ¶ 2. Plaintiffs do not dispute that the exhibit attached to Badger's declaration is anything but what Badger declares it to be: the CBA. Therefore, the Court will consider the CBA for purposes of this Order. See Davis, 691 F.3d at 1161 ("We therefore hold that where the party opposing incorporation by reference argues only that he did not review or have access to the proffered copies, this does not amount to a challenge to those documents' authenticity.").[1]

## B. Duty of Fair Representation

The Union argues Plaintiffs' DFR claim should be dismissed because it is time-barred and Plaintiffs have not alleged sufficient facts to state a claim. Mot. at 4-14.

---

[1] To the extent Plaintiffs also challenge whether the complaint sufficiently refers to the CBA, see id. at 15-16, the Court finds that the CBA is sufficiently referred to throughout the FAC. While Plaintiffs expressly refer to the CBA by name only once in the FAC, see FAC ¶ 18, the substance of the CBA permeates the FAC. Indeed, the crux of Plaintiffs' FAC concerns the fact that they were removed from the subject CBA.

1. **Statute of Limitations**

The Union argues Plaintiffs' DFR claim is time-barred because (1) on December 16, 2020,[2] the Union allegedly informed Plaintiffs that they would be removed from the bargaining unit and would lose their benefits as a result (December 2020 Meeting); and (2) in the alternative, the CBA reflecting the change was signed by Puritan Bakery on April 6, 2021 and by the Union on April 23, 2021. Either event, the Union argues, could have and did trigger the limitations period. Mot. at 4-8. Plaintiffs did not file their initial complaint until November 23, 2021. Dkt. 1-4. Plaintiffs argue that the limitations period did not begin to run until May 31, 2021, the date the Union removed Plaintiffs from the Union and its benefit plans, and the date of Plaintiffs' "actual injury." Opp'n at 1; see also id. at 5 ("Beginning on

---

[2] Plaintiffs' FAC refers to an unspecified "prior meeting." FAC ¶ 1. However, Plaintiffs' original complaint contains a host of factual details, including the December 21 date of the "prior meeting," that were omitted from their FAC. Because these allegations have not been altered or contradicted in the amended pleading, but simply deleted, the Court may consider them as judicial admissions even though the original complaint has been superseded. See Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (assertions in pleadings are judicial admissions unless amended); see also Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996) (admissions in original complaints that have been "amended or withdrawn" are no longer conclusive, but are still admissions, and courts may still consider them); Burgoon v. Narconon of N. Cal., 125 F. Supp. 3d 974, 984 (N.D. Cal. 2015) ("The amendment of a pleading does not make it any the less an admission of the party") (citing Andrews v. Metro N. Commuter R. Co., 882 F.2d 705, 707 (2d Cir. 1989)); Lee v. Delta Air Lines, Inc., No.: CV 20-8754-CBM-(JEMx), 2021 WL 4527955, at *14 (C.D. Cal. Aug. 23, 2021) (on a motion to dismiss, district court considered an allegation in plaintiff's prior complaint that she was employed in New York even though plaintiff's amended complaint omitted that fact).

May 31, 2021, i.e., the date of their expulsion by the Union, each Plaintiff began to suffer substantial losses.").[3]

When a motion to dismiss is based on the running of the statute of limitations, "it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Jablon, 614 F.2d at 682. In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. See id. DFR claims are subject to a six-month statute of limitations. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172. (1983).[4] The cause of action accrues "when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." Allen v. United Food & Commercial Workers Int'l Union, 43 F.3d 424, 427 (9th Cir. 1994); see also Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986) (a DFR claim "generally begins when an employee knows or should know of the alleged breach of duty of fair representation by a union."). To determine the operative date for the statute of limitations, "courts look to (1) the date on which the last action by the union of any consequence occurred; and (2) the point at which any injury (to the union member) allegedly caused by the union became fixed and reasonably certain." Archer v. Airline Pilots Ass'n Int'l, 609 F.2d 934, 937 (9th Cir. 1979) (simplified).

At this juncture, it is not clear from the face of the FAC that Plaintiffs' DFR claim is untimely. As an initial matter, Plaintiffs

---

[3] The Union does not dispute that the new CBA, which effectively removed "Supervisors" from the CBA and benefit plans, became effective on May 31, 2021. Mot. at 2-3; see also dkt. 19 (Reply) at 3 ("According to the CBA, formal alteration of the unit scope was done on May 31, 2021.").

[4] The parties do not dispute that the statute of limitations for a duty of fair representation claim is six months. Mot. at 4 ("The statute of limitations for a duty of fair representation suit is an intentionally short six months"); Opp'n at 6 ("The parties agree that the statute of limitations for a duty of fair representation claim is six months.").

dispute that the December 2020 Meeting constitutes "the last action by the [U]nion of any consequence" because the December 2020 Meeting was to discuss the Union's negotiation *proposals* and therefore does not constitute a "last action of . . . any consequence." See Opp'n at 11-12. The FAC does not include enough facts for the Court to determine whether the December 2020 Meeting was in fact a last action "of any consequence." Nor does the FAC contain enough facts about the December 2020 Meeting for the Court to determine that Plaintiffs knew or should have known at that time that they would be injured. Therefore, it is not clear from the face of the FAC that the first prong of the Archer test is satisfied.

As for the date of execution of the CBA, Plaintiffs primarily argue that neither Puritan Bakery's April 6, 2021 signature nor the Union's April 23, 2021 signature triggered the limitations period because (1) the April 23 signing is not a "final action . . . of any consequence"; and (2) Plaintiffs had no knowledge of the signature date of the CBA and had no knowledge of their expulsion date until they received letters from the Union informing them that they had been expelled effective May 31, 2021. Opp'n at 15-16. Even assuming the April 23 date was the "final action . . . of any consequence," it is not clear from the FAC that as of April 23, Plaintiffs knew for certain that they were going to be removed from the bargaining unit and consequently lose their benefits.

The Union relies primarily on a single decision, Eason v. Waste Mgmt. of Alameda Cnty., No. C-06-06289 JCS, 2007 WL 2255231, at *7 (N.D. Cal. Aug. 3, 2007), for the proposition that Plaintiffs are charged with "constructive knowledge" of the terms of the new CBA as of April 23. See Mot. at 6-7. But Eason is distinguishable.

Based on the foregoing, at this juncture, the Court cannot find on the face of Plaintiffs' FAC that their DFR claim is time-barred. Therefore, the Union's motion to dismiss Plaintiffs' DFR claim on this grounds is DENIED.

### 2. Substance of Plaintiffs' DFR Claim

The duty of fair representation is the union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Diaz v. Int'l Longshore & Warehouse Union, Loc. 13, 474 F.3d 1202, 1205 (9th Cir. 2007) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). The union's duty "applies to all union activity, including contract negotiations." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotation marks omitted). A union breaches its duty of fair representation when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Rollins v. Cmty. Hosp. of San Bernardino, 839 F.3d 1181, 1186 (9th Cir. 2016) (simplified). "The Supreme Court has enunciated a highly deferential standard for reviewing the substantive results of a union's negotiation efforts, which should be evaluated 'in light of both the facts and the legal climate that confronted the negotiators at the time the decision was made.'" Marquez v. Screen Actors Guild, Inc., 124 F.3d 1034, 1037 (9th Cir. 1997) (quoting O'Neill, 499 U.S. at 78). "[A] union's conduct generally is not arbitrary when the union exercises its judgment . . . . If the challenged conduct involves the union's judgment, then the plaintiff[ ] may prevail only if the union's conduct was discriminatory or in bad faith." Demetris v. Transp. Workers Union of Am., AFL-CIO, 862 F.3d 799, 805 (9th Cir. 2017) (simplified).

a. Arbitrary

The Ninth Circuit has held that "a union's conduct generally is not arbitrary when the union exercises its judgment." Demetris, 862 F.3d at 805 (citation omitted). "When a union exercises its judgment, its action 'can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation.'" Id. (quoting Beck v. United Food & Commercial Workers Union, Loc. 99, 506 F.3d 874, 880 (9th Cir. 2007) (simplified). Under this "highly deferential standard, union conduct will only be deemed arbitrary if it is so far outside the

wide range of reasonableness, that it is wholly irrational." Id. at 805 (citation omitted) (simplified).

As an initial matter, the Court finds the Union's decision to remove Plaintiffs from the bargaining unit is an exercise of the Union's judgment and is not procedural in nature. See Kaufman v. Int'l Longshore & Warehouse Union, No. 14-cv-03237-JST, 2015 WL 5698742, at *8 (N.D. Cal. Sept. 29, 2015) (determining that the defendant union's "decision to add new bargaining units or safeguard certain jobs involves the exercise of the union's judgment and is not procedural in nature.").

In any event, Plaintiffs claim the Union's decision to remove them from the bargaining unit was "irrational" and "arbitrary" because (1) the Union failed to provide Plaintiffs with any explanation for why they were being removed and (2) they were removed despite any changes in their job functions and despite the fact that the Union had represented them "for many years" in their capacity as Sales Supervisors. Opp'n at 18. The Union argues that it did not act "arbitrarily" because, as Plaintiffs allege in their FAC, at the December 2020 Meeting, Badger justified the Union's actions on the basis that "some Drivers believed that the Sales Supervisors were 'aligned with the employer' and should not be allowed to vote on contracts." Mot. at 10 (quoting FAC ¶ 16). The Court agrees. Plaintiffs cannot allege in the first instance that the Union's removal of Plaintiffs was "arbitrary" and "irrational," and also admit that the Union's representative informed Plaintiffs that other members of the Union believed Plaintiffs were "aligned with the employer." In other words, the Union's decision to remove Plaintiffs from the bargaining unit because they were believed to be "aligned with the employer" cannot be deemed to be "so far outside the wide range of reasonableness" as to be considered "wholly irrational."

Plaintiffs allege that their removal from the bargaining unit was "taken for the false and pretextual reason that plaintiffs were 'Sales Supervisors' and therefore considered management employees." FAC ¶ 22. Yet, Plaintiffs fail to allege any facts suggesting their removal

11

was "false and pretextual." Rather, by Plaintiffs' own admission, the Union explained to Plaintiffs that Drivers employed by Puritan Bakery believed Sales Supervisors, including Plaintiffs, were "aligned with [Puritan Bakery]." Id. ¶ 16. Plaintiffs merely allege that they were removed from the bargaining unit because of their job title of Sales Supervisor, and from that they conclude, without providing a sufficient factual basis, that such action was "false and pretextual." The conclusion Plaintiffs arrive at is too great a logical leap from the facts they allege.

        b.      Discriminatory

To state a claim "that the union's exercise of judgment was discriminatory," a plaintiff must allege "discrimination that is intentional, severe, and unrelated to legitimate union objectives." Beck, 506 F.3d at 880 (simplified).

Plaintiffs do not allege any facts supporting their assertion that the Union's actions were discriminatory. Instead, Plaintiffs allege for the first time in their opposition that the Union's actions were discriminatory on the basis of age. Opp'n at 21-22. Because Plaintiffs' age discrimination claim was not alleged in their FAC, the Court declines to consider it at this time. See Diamond S.J. Enter., Inc. v. City of San Jose, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) (a "complaint may not be amended by briefs in opposition to a motion to dismiss.") (citations omitted)); see also Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding that "'new' allegations contained in the [plaintiffs'] opposition motion [] are irrelevant for Rule 12(b)(6) purposes" because "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

        c.      Bad Faith

To state a claim that "the union's exercise of judgment was in bad faith," the plaintiff must "plead facts that, if true, show 'substantial

evidence of fraud, deceitful action or dishonest conduct." Demetris, 862 F.3d at 808 (quoting Beck, 506 F.3d at 880). "Unions owe their members 'complete good faith and honesty.'" Demetris, 862 F.3d at 808 (quoting United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO, 770 F.3d 846, 848 (9th Cir. 2014)). "Even so, mere negligence and erroneous judgment calls cannot, by themselves, support an inference of bad faith." Demetris, 862 F.3d at 808.

Plaintiffs argue that the Union's decision to remove Plaintiffs from the bargaining unit was made in bad faith because (1) Plaintiffs were in "in good standing of the Union for many years[,] ha[d] been in the same classification for several years," and "nothing had changed" with respect to their job duties; and (2) the Union deemed Plaintiffs to be management employees and therefore ineligible for membership in the Union. Opp'n at 20. Plaintiffs contend that for these reasons, they have plausibly alleged "fraud, deceitful action or dishonest conduct." Id. However, other than the conclusory statement, Plaintiffs fail to allege how or why their removal was fraudulent, deceitful, or otherwise dishonest. In fact, Plaintiffs' own allegations suggest the Union's decision to remove Sales Supervisors, including Plaintiffs, was in the best interest of its members. See FAC ¶ 16 (Union representative explaining that "some Drivers believed that the Sales Supervisors were 'aligned with the employer' and should not be allowed to vote on contracts.").

For the foregoing reasons, the Union's motion to dismiss Plaintiffs' DFR claim is GRANTED with leave to amend.

C. Breach of Written Contracts

The Union argues (1) Plaintiffs' claim for breach of written contracts is preempted by the duty of fair representation; and (2) even if Plaintiffs' breach of written contracts claim is not preempted, Plaintiffs have failed to state a plausible claim for relief. Mot. at 13-15.

The duty of fair representation preempts state law claims that fall under its umbrella. Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to

13

represent them also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."). To bring an unpreempted state law claim against a union successfully, a union member "must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship." Id. at 539. Such duties must stem not from the union's general duty of fair representation, but from some other source, "such an express provision of the collective bargaining agreement or a collateral contract." Id. at 539-40.

Plaintiffs allege "Plaintiffs and defendant Union had a contractual relationship based on defendant Union's bylaws, constitution, and other internal documents," and that the Union breached said bylaws, constitution, and "other internal documents" by excluding Plaintiffs from membership in the Union, despite Plaintiffs' "eligibility as non-supervisory employees within the bargaining unit." FAC ¶¶ 29, 31. But these are conclusory allegations, and Plaintiffs do not identify "an express provision of the CBA or a collateral contract that imposed additional enforceable duties upon the Union." Adkins, 526 F.3d at 540 (preempting plaintiff's breach of contract claim). Moreover, Plaintiffs rely on the same facts alleged with respect to their DFR claim. Compare FAC ¶ 21 with id. ¶ 31. Because Plaintiffs fail to allege any facts suggesting the Union had "additional enforceable duties," Plaintiffs seek to enforce duties that they allege are owed to them as a result of the Union's status as their union representative. Therefore, Plaintiffs' claim against the Union for breach of written contracts is preempted by the duty of fair representation.

In any event, even if Plaintiffs' claim is not preempted, Plaintiffs have failed to state a claim for breach of written contracts. Plaintiffs conclude that the Union had a contractual relationship based on the Union's "bylaws, constitution, and other internal documents," neither identify which terms of the Union's bylaws and constitution the Union purportedly breached, nor specify which "internal documents" the Union allegedly breached.

14

The Union's motion to dismiss Plaintiffs' breach of written contracts claim is GRANTED with leave to amend.

### D. Intentional Infliction of Emotional Distress

The Union argues (1) Plaintiffs' IIED claim is preempted by the duty of fair representation; and (2) even if Plaintiffs' IIED claim is not preempted, Plaintiffs have failed to state a plausible claim for relief. Mot. at 13-15.

Plaintiffs allege they have sustained anxiety, depression, and mental and emotional distress as a result of the Union's "arbitrary, discriminatory, and bad faith conduct in the context of . . . contract negotiations" pertaining to their removal from the bargaining unit. FAC ¶ 20; see also id. ¶¶ 16-18, 36 (incorporating the conduct alleged in FAC ¶¶ 16-20 as the basis for Plaintiffs' IIED claim).

Plaintiffs' IIED claim is also preempted because the facts they allege in support of their assertion that the Union acted "outrageously," are "inseparable from [the Union's] performance of [its] role as [a] collective bargaining representative." Adkins, 526 F.3d at 541. In other words, the conduct at issue is the Union's effort, or lack of effort, to ensure that Plaintiffs remained in the bargaining unit, which they failed to do when Plaintiffs were removed effective May 31, 2021. Indeed, the facts underlying Plaintiffs' IIED claim are the same facts Plaintiffs rely on for their DFR claim. Compare FAC ¶¶ 1, 13, 15-20 with id. ¶¶ 22, 24-25, and id. ¶ 36. Plaintiffs' allegations stem entirely from the Union's conduct on Plaintiffs' behalf. Therefore, Plaintiffs' IIED claim is preempted.[5]

Based on the foregoing, the Union's motion to dismiss Plaintiffs' IIED claim is GRANTED with leave to amend.

---

[5] Plaintiffs allege for the first time in their opposition that their IIED claim is predicated on the Union's discriminatory conduct. The Court declines to consider Plaintiffs' argument at this time. See Diamond S.J. Enter., Inc., 395 F. Supp. 3d at 1231; see also Schneider, 151 F.3d at 1197 n.1.

15

## IV. CONCLUSION

The Union's motion is GRANTED. Plaintiffs' FAC is DISMISSED with leave to amend. An amended complaint must be filed and served no later than April 8, 2022. Failure to file by that date will waive the right to do so, and the case will be dismissed. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

Date: March 11, 2022

Dale S. Fischer
United States District Judge